**James V. PAPPAS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 2–1277A448.

Court of Appeals of Indiana, Second District.

March 13, 1979.

3. Harris requested an award for damages and costs of this appeal. That request, of course, is denied.

Theo. L. Sendak, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-Appellant James V. Pappas (Pappas) appeals from a conviction of theft, claiming insufficiency of the evidence to support the judgment, that the judgment was contrary to the evidence and contrary to law, and that the trial court erred in admitting certain evidence and in overruling his motion for discharge.

We affirm.

## FACTS

The facts and evidence most favorable to the trial court's judgment show that Pappas was a contractor on two residences for which First Federal Savings and Loan Association of Hendricks County (First Federal) had arranged mortgage loans for borrowers Goad and Sanders. On December 23, 1975, Robert E. Brown, loan officer of First Federal, met with Pappas, Goad and Sanders for loan closings on the mortgage applications.

Prior to disbursement of checks from loan funds to Pappas for work completed, First Federal required Pappas to sign a contractor's affidavit for each project, which he did. The documents were later signed by a notary who was not present at the closing. Subsequently, First Federal learned that,

contrary to statements in the affidavits, some contractors had not been paid by Pappas and liens had been placed against the properties.

## ISSUES

The following issues are presented for our review:

I. Did the court err in admitting into evidence Exhibits # 3 and # 5?

II. Was there sufficient evidence of deceit?

III. Was there sufficient evidence of the elements of ownership, control, and intent to deprive?

IV. Did Pappas act under an honest claim of right?

V. Did Pappas receive the property described in the indictments?

## DECISION

The relevant part of the statute under which Pappas was charged read as follows:

A person commits theft when he (1) knowingly:

\* \* \* \* \* \*

(b) obtains by deception control over property of the owner . . . and

\* \* \* \* \* \*

(a) intends to deprive the owner of the use or benefit of the property.

Ind.Code 35–17–5–3.[1]

## ISSUE I

Did the court err in admitting into evidence Exhibits # 1 and # 2?

CONTENTIONS—Pappas objected to the admission into evidence of two purported affidavits signed by him.[2] Citing *Gossard v. Vawter* (1939), 215 Ind. 581, 21 N.E.2d 416, Pappas contends that because the jurats on the instruments were improperly executed the documents were invalid for any purpose.

The State does not deny that the notary was not present when the papers were signed and that Pappas was not sworn. However, the State argues that there is no requirement that the documents be sworn statements, only that First Federal be deceived.

◼ CONCLUSION—An affidavit with an invalid jurat is admissible as an unsworn statement if there is no requirement that the statement be sworn for the purpose that it is offered.

◼ An affidavit is a written statement of fact which is sworn to as the truth

---

**1.** This section, Acts 1963 (Spec.Sess.), ch. 10, § 3, p. 10; 1971, P.L. 458, § 1, p. 2096, was repealed effective October 1, 1977 by Acts 1976, P.L. 148, § 24.

**2.** State's Exhibit 2:

AFFIDAVIT
STATE OF INDIANA
  SS:
COUNTY OF HENDRICKS
James V. Pappas of Brownsburg, IN, dba/_____, being duly sworn upon his/their oath, says that he/they acted as the general/sub-contractor for the work and material furnished for the construction of a new house located at 301 Bridlewood Trail, Danville, Indiana.
Affiant says that all work performed by affiant as such general or sub-contractor has been partially completed and that all bills for materials and/or labor used in said construction to date have been paid in full and that there are no outstanding. claims for material and/or labor used in said construction to date which can ripen into liens; Affiant further agrees to indemnify and hold harmless First Federal Sav-

ings and Loan Association of Hendricks County and its mortgagors from any such claims for material and/or labor. <u>Affiant makes these statements to induce First Federal Savings and Loan Association of Hendricks County to make a partial disbursement</u> of a first mortgage loan No. 7033–5X on said property.
Further affiant saith not.
  /S/ <u>JAMES V. PAPPAS</u>
      James V. Pappas
Subscribed and sworn to before me, a Notary Public, in and for said County and State, this 23rd day of Dec. 1975.
  /S/ <u>Betty Bradley</u>
      Notary Public Betty Bradley
My Commission expires:
December 7, 1976
  [Seal]
(Emphasis Added).
  The other affidavit, Exhibit # 1, is the same form with differences only in the house address, that the work was fully completed and the mortgage loan number.

before an authorized officer. *Dawson v. Beasley* (1962), 242 Ind. 536, 180 N.E.2d 367; 2A C.J.S. Affidavits § 3 (1972).

■ The jurat is a certificate of the due administration of an oath. *Craig v. State* (1953), 232 Ind. 293, 112 N.E.2d 296. The jurat is not a part of the affidavit, but simply evidence that the oath was made, and may be shown to be false. If it is shown to be false the instrument is not an affidavit. *Agricultural Bond and Credit Corp. v. Courtenay Farmers' Co-op Assn.* (1933), 64 N.D. 253, 251 N.W. 881; *Stern v. Board of Elections of Cuyahoga County* (1968), 14 Ohio St.2d 175, 43 Ohio Op.2d 286, 237 N.E.2d 313. The purported affidavit is then merely an unsworn statement of fact. *Common Wealth Insurance Systems, Inc. v. Kersten* (1974), 40 Cal.App.3d 1014, 115 Cal. Rptr. 653.

In *Gossard*, Judge Shake discussed with approval the view that the omission of a jurat upon an affidavit is not fatal to the validity of the affidavit, so long as it is shown that the affidavit was duly sworn to before an authorized officer. *See State v. Grant* (1965), 246 Ind. 317, 204 N.E.2d 658 (petition for review from zoning appeals board); *Wever v. Reeves* (1951), 229 Ind. 164, 96 N.E.2d 268 (petition to contest election); *New York Cent. R. Co. v. Burch* (1939), 216 Ind. 271, 23 N.E.2d 586 (surveyor's report and profile). In the above cases sworn statements were required by statute; and the Supreme Court either found the defect to be fatal or allowed evidence proving a valid oath.

■ However, in the instant case there is no requirement that the statement be sworn to for First Federal to be deceived. First Federal requested Pappas to sign the statement forms and, after seeing that they were signed, its agent, Brown, proceeded with the closings. Pappas did not argue at the time that the flaw in the execution of each jurat invalidated the disbursement of funds to him.

We do not find that *Gossard* requires a valid oath to be proved where there is no mandatory requirement that a party be duly sworn before an authorized officer. Where there is no requirement that a particular instrument be an affidavit for the purpose that it is offered, the fact that it is invalid as an affidavit because of some failure in the jurat, is unimportant. *See, Merrifield v. Paw Paw* (1936), 274 Mich. 550, 265 N.W. 461; *Kersten, supra.*

The trial court correctly dismissed Pappas' charges as to the invalidity of the instruments as affidavits and properly admitted the exhibits as evidence relevant to the element of deception in the charge of theft.

## ISSUE II

Because of the defects in the exhibits, was the finding of deceit supported by sufficient evidence or contrary to law?

■ CONTENTIONS—Pappas contends that because Brown knew that the papers were improperly notarized, First Federal could not claim to have been deceived by his signature.

The State contends that by signing the statements Pappas knowingly gave the false impression to Brown that all debts were paid.

CONCLUSION—There is sufficient evidence of deceit.

The O.A.P.A. defined "deception" at Ind. Code 35–17–5–13 [3] as follows:

"Deception" means knowingly to:

(a) create or confirm another's impression which is false and which the actor does not believe to be true; or

(b) fail to correct a false impression which the actor previously has created or confirmed;

\* \* \* \* \* \*

Deception may relate to the fact, value, law, opinion or intention.

There is sufficient evidence in the record to show that Pappas had not paid some

---

**3.** This section, Acts 1963 (Spec.Sess.), ch. 10, § 13, p. 10; 1973, P.L. 330, § 3, p. 1810; 1974, P.L. 150, § 1, p. 635 was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

sub-contractors, and that his signing of the statements gave Brown the impression that the statement therein, that all the sub-contractors had in fact been paid, was true.

Knowledge can be inferred from the facts and circumstances of the deception involved. *See, Schmidt v. State* (1973), 156 Ind.App. 1, 294 N.E.2d 638. Brown testified that he would not have distributed the payments unless Pappas first signed the documents. We cannot say that the finding that the checks were obtained by deception was not supported by sufficient evidence or was contrary to law. *See, Harrod v. State* (1928), 200 Ind. 24, 161 N.E. 3; *McCrann v. State* (1920), 189 Ind. 677, 128 N.E. 848.

### ISSUE III

Were the elements of ownership, obtaining control, and intent to deprive First Federal of the property supported by sufficient evidence or contrary to law?

CONTENTIONS—Pappas contends that because First Federal was not the owner of the property allegedly taken, the evidence was insufficient to establish the elements of control and intention to deprive First Federal of property. He further argues that the decision by the trial court on the ownership, control and intention to deprive elements was contrary to law.

The State contends that the court's findings were supported by sufficient evidence and were not contrary to law.

CONCLUSION—We find that there was sufficient evidence of ownership, control, and of intention to deprive, and that the decision was not contrary to law.

When reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. Considering only the evidence most favorable to the State and the logical inferences to be drawn therefrom, we will not disturb the judgment if there is substantial evidence of probative value from which the trier of fact could reasonably infer the defendants' guilt beyond a reasonable doubt. *Schilling v. State* (1978), Ind., 376 N.E.2d 1142.

The Offenses Against Property Act (O.A.P.A.), under which Pappas was charged, defined "owner" as "a person, other than the actor, who has possession of or any other interest in the property involved, . . . and without whose consent the actor has no authority to obtain or exert the complained of control over the property." Ind.Code 35–17–5–13(12).[4]

According to our Supreme Court, in *Gunder v. State* (1968), 250 Ind. 689, 238 N.E.2d 655, it need not be proven that the absolute ownership of the property allegedly taken be in the person alleged to be the owner, but it is sufficient if the evidence shows him to be in lawful possession of the property. *See also, Gregory v. State* (1973), 259 Ind. 652, 291 N.E.2d 67; *Bryant v. State* (1969), 252 Ind. 17, 245 N.E.2d 156.

The evidence clearly established that First Federal had lawful possession of the funds to be disbursed and had the duty to handle the payment of the funds committed to the mortgagors.

Further, there is sufficient evidence upon which to base a finding that Pappas obtained control over the property. The two checks, made payable to the order of James V. Pappas, and to James V. and Rosemary Pappas, were distributed by First Federal at the closings. The payees' names appear on the reverse side of the checks as endorsements, and the checks were processed.

Finally, his intent to deprive First Federal of the funds can be clearly inferred from his deliberate act of signing the "affidavits" for the release of the funds. *See, Holliday v. State* (1970), 254 Ind. 85, 257 N.E.2d 679.

### ISSUE IV

Did Pappas act under an honest claim of right?

CONTENTIONS—Pappas contends that he obtained the disbursements in exchange for the value of the work performed and as such, under an honest claim of right.

---

4. This section, Acts 1963 (Spec.Sess.), ch. 10, § 13, p. 10; 1973, P.L. 330, § 3, p. 1810; 1974, P.L. 150, § 1, p. 635 was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

The State argues that Pappas exchanged less than value because there were outstanding debts upon which liens could have been, and were, filed, and his attempt to receive payment was, in fact, dishonest.

CONCLUSION—In upholding the trial court's finding that Pappas obtained the property by deception from one lawfully in possession, we have precluded a finding that he acted under an honest claim of right or that, in the words of the statute, . . "he believe[d] that he [was] entitled to the property or that he [was] authorized to dispose of it as he [did]. Ind.Code 35–17–5–7; [5] *Schmidt, supra.*

## ISSUE V

Did the court err in overruling his motion for discharge when Pappas allegedly did not receive the property described in the indictments?

CONTENTIONS—Citing *Kirk v. State* (1968), 250 Ind. 307, 235 N.E.2d 684, Pappas contends that the court erred in overruling his motion for discharge in which he alleged, *inter alia,* that he did not obtain the property which is described in Count I of the indictment as follows:

". . . property of First Federal Savings and Loan Association of Hendricks County, to-wit: United States currency of the value of Five thousand dollars in the form of a check drawn on the First National Bank and Trust Company of Plainfield, Indiana,"

and in Count II as follows:

". . . property of First Federal Savings and Loan Association of Hendricks County, to-wit: United States currency of the value of One thousand twenty-five dollars in the form of a check drawn on the First National Bank and Trust Company of Plainfield, Indiana."

The State argues that evidence that the defendant received the check is sufficient evidence to support the conviction.

CONCLUSION—There is sufficient evidence to support a finding of theft of the particular property that is described in the indictments.

In *Bigbee v. State* (1977), Ind.App., 364 N.E.2d 149, this Court recognized that the O.A.P.A. permitted a check to be the subject of theft. Ind.Code 35–17–5–13(15). We agree with the decision in *Kirk* which requires the State to set forth in the indictments with exactitude the property obtained. However, the indictment in *Kirk* charged the defendant solely with theft of "the sum of Two Thousand Dollars in lawful United States currency, then and there of the value of Two Thousand Dollars ($2,000.00)". In the indictment in the instant case, the property allegedly obtained is sufficiently described as two checks. The value of the checks, payable to Pappas and in his possession, is a separate question for the jury. *See, Bigbee, supra; Burrows v. State* (1894), 137 Ind. 474, 37 N.E. 271.

Furthermore, exhibits # 5 and # 3 reveal that they were properly endorsed and cashed, supporting a finding that Pappas did receive payment and obtained control over "United States currency." *See, Burrows, supra; O'Riordan v. State* (1966), 247 Ind. 265, 215 N.E.2d 185.

The judgment of the trial court is affirmed.

SULLIVAN and SHIELDS, JJ., concur.

---

**5.** This section, Acts 1963 (Spec.Sess.), ch. 10, § 7, p. 10 was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.