Chin W. **YANG** and Shi Chia Yang, Appellants (Plaintiffs Below),

v.

Thomas M. **STAFFORD**, M.D. and Lutheran Hospital of Fort Wayne, Indiana, Appellees (Defendants Below).

No. 92A04–8611–CV–332.

Court of Appeals of Indiana, Fourth District.

Dec. 10, 1987.

Rehearing Denied Feb. 10, 1988.

Terrence P. Pehler, Stephen B. Caplin, Indianapolis, for appellants.

John F. Lyons, John M. Clifton, Jr., Barrett & McNagny, Fort Wayne, Mary Nold Larimore, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees.

CONOVER, Judge.

Chin W. Yang and Chi Shia Yang appeal a trial court entry of summary judgment in favor of Dr. Thomas M. Stafford and Lutheran Hospital of Fort Wayne. The Yangs raise the following issues for our consideration:

(1) Did the trial court erroneously strike the affidavits of the Yangs and their expert witness, Dr. Bruce Work?

(2) Did the trial court erroneously deny the Yangs' motion for relief under Ind. Rules of Procedure, Trial Rule 56(F)? [1]

(3) Did the trial court erroneously grant summary judgment in favor of Dr. Stafford and Lutheran?

We reverse and remand this case for a trial on the merits.

On December 7, 1980, Mrs. Yang entered Lutheran Hospital in labor. After several hours of irregular contractions she was given Pitocin to help stimulate her labor. Early the following morning, Dr. Stafford, her obstetrician, performed a caesarian section. During the surgery the lower section of Mrs. Yang's uterus tore and she began bleeding heavily. Stafford made an attempt to repair the tears but later that morning had to perform a life-saving hysterectomy on Mrs. Yang.

The Yangs filed an action with the Indiana Department of Insurance against Lutheran and Stafford claiming that the hospital nurses were negligent in their administration of Pitocin and that Stafford was negligent in his performance of the surgery. The medical review panel unanimously found in favor of Lutheran and Stafford. The Yangs then filed the instant action against Lutheran and Stafford. The Whitley Circuit Court granted summary judgment in favor of both defendants and this appeal ensued.

■ The Yangs first contend the trial court erred in striking affidavits made by the Yangs and their expert witness, Dr. Work. In their motions to strike the affidavits, both Lutheran and Stafford claimed that because the affidavits lacked a jurat,[2] they were not properly verified. Ind. Rules of Procedure, Trial Rule 11(B) provides as follows:

*Verification by Affirmation or Representation.* When in connection with

---

1. We need not address this issue as our holding on the remaining issues is dispositive.

2. A jurat is a symbol certifying the administration of an oath. *Pappas v. State* (1979), 179 Ind.App. 547, 386 N.E.2d 718, 721.

any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:

'I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

(Signed)_____,

Any person who falsifies an affirmation or representation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit.

The term affidavit has been defined at common law as being a written statement under oath taken before an authorized officer. *Dawson v. Beasley* (1962), 242 Ind. 536, 180 N.E.2d 367; *State ex rel. Peterson v. Board of Trustees* (1985), Ind.App., 474 N.E.2d 520. The jurat is not part of the affidavit; it is merely evidence that the oath has been taken. *Pappas v. State* (1979), 179 Ind.App. 547, 386 N.E.2d 718, 721. Trial Rule 11(B) clearly states that the use of the affirmation language is sufficient to verify an affidavit. The trial rules are intended to secure the just, speedy and inexpensive determination of every action, Ind. Rules of Procedure, Trial Rule 1, to simplify and abbreviate proceedings, to remedy abuses and imperfections in the practice, and to abolish unnecessary forms, technicalities and proceedings. IND. CODE 34-5-2-1. Therefore, "[i]n lieu of the usual form of jurat, the parties may affirm the truth of the matter in accordance with Trial Rule 11(B)...." 2 Thompson and Hostetler, *Indiana Forms of Pleading and Practice,* § 11.08 (1987). The rule provides a more expeditious method of verification and yet subjects a false subscriber to the same penalty of perjury.

In this case, the three affidavits in question all contained the affirmation language required by T.R. 11(B). Therefore, under Rule 11(B) the affidavits were sufficiently verified and the lack of a jurat was not fatal.

■ Lutheran and Stafford argue, however, that because Dr. Work's affidavit was taken in Illinois it was subject to additional verification requirements. IND. CODE 34-1-18-10 provides:

When any affidavit is taken in another state, and certified by the officer or justice of the peace taking the same, under his hand and seal of office, if he have any such seal, and attested by the clerk of the circuit or district court, or court of common pleas of the county where such officer exercises the duties of his office, under the hand of the clerk and seal of his court, the clerk also certifying that the officer or justice of the peace is, by the laws of said state, duly empowered to administer oaths and affirmations, and take affidavits, every such affidavit shall be deemed sufficiently authenticated, and may be received and used in any of the courts of this state.

Prior to the adoption of the trial rules, our supreme court interpreted IC 34-1-18-10 to require certification by the clerk of the foreign court as a condition precedent to receipt by our courts of an affidavit taken in another state. *See Smith v. Smith* (1916), 185 Ind. 75, 113 N.E. 296; *Jackson v. State* (1903), 161 Ind. 36, 67 N.E. 690. Trial Rule 1, however, makes it clear that the trial rules govern the procedure and practice in all civil suits in Indiana. The rules therefore take precedence, and conflicting statutes shall have no force or effect. IC 34-5-2-1; *Augustine v. First Federal Savings & Loan Association* (1979), 270 Ind. 238, 384 N.E.2d 1018; *Otterman v. Industrial Board, Violent Crime Compensation Division* (1985), Ind. App., 473 N.E.2d 1021.

■ Rule 11(B) applies to "any civil" proceeding. It does not distinguish between an in-state and out-of-state subscriber but merely states that "it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation" that he affirms under the penalties for perjury that the representations made are true. T.R. 11(B). An out-of-state subscriber still would be sub-

ject to our criminal penalties for perjury for making a false affidavit. Stafford and Lutheran assert that T.R. 11(C) incorporates IC 34–1–18–10 as an additional attestation requirement for out-of-state affidavits. In support of their argument, they rely on the following language found in T.R. 11(C):

> When ... affidavits are verified or under oath they shall not require other or greater proof on the part of the adverse party than if not verified or not under oath unless expressly provided otherwise by these rules, statute or other law.

We do not interpret T.R. 11(C), however, to require resort to statutes to determine whether the affidavit has been properly verified. Rather, this language in T.R. 11(C) addresses the burden of proof placed upon a party seeking to rebut substantive statements made in the affidavits. Thus, the resort to other statutes occurs only when the issue is the burden of proof placed upon the adverse party seeking to rebut statements made in the affidavit.[3] In addition, the statutory language in IC 34–1–18–10 is not mandatory. The statute, simply stated, provides that when an affidavit taken in another state is properly certified in that state it will be deemed sufficient and may be used in Indiana courts. When read in conjunction with T.R. 11(B), the statute could be interpreted to state that where a foreign affidavit is made under a system not utilizing language similar to the language of 11(B), the affidavit may still be received by our courts if it is certified by the clerk of a court in that state. To interpret IC 34–1–18–10 to require additional attestation, however, would be inconsistent with the intent behind the trial rules to avoid technicalities and simplify the litigation process. We

therefore conclude that the out-of-state affidavit made by Dr. Work was sufficiently verified.

Stafford and Lutheran also contend that, even absent any deficiencies in form, Dr. Work's affidavit was substantively defective and therefore was properly struck. They first argue that Dr. Work's affidavit lacked a sufficient foundation and that Work was incompetent to testify by affidavit. Ind. Rules of Procedure, Trial Rule 56(E).

[5] In order to be admissible an expert opinion must be preceded by a foundation of evidence establishing the witness' credentials and the reliability of any scientific methods used by the witness in forming his opinion. *Noblesville Casting v. Prince* (1982), Ind., 438 N.E.2d 722. It was therefore necessary for Work's affidavit to establish his familiarity with the standard of care for physicians and hospitals in communities similar to Fort Wayne. *See Weinstock v. Ott* (1983), Ind.App., 444 N.E.2d 1227; *Searcy v. Manganhas* (1981), Ind. App., 415 N.E.2d 142.

In his affidavit, Dr. Work stated that he is licensed to practice obstetrics and gynecology in Illinois. He stated that he had examined Mrs. Yang's hospital records as well as the depositions of Dr. Stafford and nurse Parker. He then made the following declaration regarding his familiarity with the locality:

> 3. I am familiar with the standard of care of physicians who specialize in obstetrics such as Dr. Stafford in cities of the size of Fort Wayne with a metropolitan population in excess of 500,000 or in similar communities. I am also familiar with standard hospital care for general

---

**3.** Stafford and Lutheran rely on *State ex rel. Peterson v. Board of Trustees* (1985), Ind.App., 474 N.E.2d 520, as authority to go beyond T.R. 11(B) and require additional attestation based on a statute. In *State ex rel. Peterson,* the Third District held that the T.R. 11(B) language was insufficient to verify petitions under the Indiana School Reorganization Act, which specifically required additional certification. As Judge Hoffman carefully pointed out, however, proceedings under the reorganization act are administrative and therefore are not governed by

the trial rules. *Id.* at 523. Thus, the *State ex rel. Peterson* case is distinguishable.

We also are unpersuaded that the case of *Ayers v. State* (1980), 272 Ind. 574, 400 N.E.2d 143, governs in this case. In *Ayers,* the court held that IC 34–1–18–10 does not apply to public records. Although the court, in dicta, stated that the statute applies to foreign affidavits, it did not discuss the circumstances under which the statute would be applicable. Therefore, the *Ayers* case is inapposite.

hospitals in communities such as Fort Wayne, Indiana.

Stafford and Lutheran contend that Work's declarations are insufficient to establish his competency to testify as an expert witness. Specifically, the defendants challenge Work's familiarity with Fort Wayne based on his inaccurate statement that the population exceeded 500,000. Population may be considered when determining an expert witness' familiarity with a locality. *See Weinstock, supra.* We conclude, however, that given the context of Dr. Work's inaccurate statement regarding Fort Wayne's population, it was of no consequence in determining Dr. Work's competence to testify by affidavit.

In addition, Lutheran contends that Dr. Work's failure to specify a familiarity with nursing standards renders him incompetent to testify. We disagree. Work's statement that he is familiar with the standard of care for general hospitals in communities such as Fort Wayne is sufficient to include a familiarity with the standard of care for the nurses on staff at those hospitals.[4] We therefore conclude that Dr. Work was competent to testify by affidavit.

█ Stafford and Lutheran also assert that Dr. Work's affidavit was substantively defective because Dr. Work's opinions lacked a reasonable degree of medical certainty. Although the "reasonable certainty" standard was designed to assure trustworthiness, the assessment of credibility and reliability remains a function of the jury. *Kaminski v. Cooper* (1987), Ind. App., 508 N.E.2d 29, 31. Therefore, the admissibility of a physician's testimony should not be determined by examining the level of certainty in his opinions since the court would be invading the province of the jury. *See Kaminski, supra* at 31. Rather, the expert's opinion is admissible if "a proper foundation establishes the need for expert testimony and the expert's credentials establish an expertise in the area and the methods employed...." *Id.* at 30.

Once these factors are established, the evidence is admissible and the jury is left to perform its function of assessing the reliability of the evidence. *Id.*

█ Under T.R. 56(E), it is not necessary that the facts presented by affidavit be sufficient to support a verdict. Rather, they need only be admissible as evidence. Because the demand for reasonable certainty does not apply in determining admissibility, any lack of a reasonable certainty by Dr. Work did not render his affidavit substantively defective for summary judgment purposes.

The Yangs contend that the three improperly stricken affidavits present questions of fact sufficient to avoid a summary judgment. After striking the affidavits, the trial court granted summary judgment in favor of Dr. Stafford and Lutheran based on the Yangs' failure to present expert testimony regarding the applicable standard of care, breach of that standard, and proximate causation. (R. 841) *See, Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18.

█ Summary judgment is appropriate only where there exists no genuine issue of a material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Dutton v. International Harvester Co.* (1987), Ind.App., 504 N.E.2d 313, 315. We must liberally construe all evidence in favor of the nonmoving party and resolve any doubt against the proponent of the motion. *Id.* Even if the trial court believes the nonmoving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. *Id.* at 316.

█ The documents filed by the parties in conjunction with the T.R. 56 motion reveal several factual issues. These include: (1) whether Dr. Stafford breached the standard of care by failing to repair uterine tears during the caesarian section; (2) whether such failure proximately caused

---

4. We also note that Dr. Work's references throughout his affidavit to the date in question, December of 1980, are sufficient to establish his familiarity with the standard of care applicable on that date.

Mrs. Yang to have to undergo a life-saving hysterectomy; (3) whether Lutheran's nurses breached the standard of care by increasing the Pitocin flow rate beyond the rate allowed by hospital protocols and when the fetal heart tones indicated over-stimulation; (4) whether the nurses refused any order by Mrs. Yang to discontinue the Pitocin after informing Mrs. Yang she would be able to have the medication discontinued if she so chose; and (5) whether the nurses' acts proximately caused the extreme thinning of the lower uterine section resulting in the uterine tears. Given the abundance of factual questions emerging from the documents filed in conjunction with the motion, we conclude that the trial court erred when it entered summary judgment in favor of Dr. Stafford and Lutheran. Accordingly, the judgment is reversed and the case is remanded for a trial on the merits.

MILLER and SHIELDS, P.JJ., concur.