Allen A. VOGLER and Jane M. Vogler,
Appellants–Plaintiffs,

v.

Pedro R. DOMINGUEZ, M.D. and
Deaconess Hospital, Inc.,
Appellees–Defendants.

No. 82A01–9306–CV–192.

Court of Appeals of Indiana,
First District.

Nov. 30, 1993.

Rehearing Denied Jan. 4, 1994.

Gary Becker, Becker Law Office, Louisville, KY, for appellants-plaintiffs.

Robert H. Hahn, Michele S. Bryant, Bamberger, Foreman, Oswald & Hahn, William E. Statham, Statham, Johnson & McCray, Evansville, for appellees-defendants.

ROBERTSON, Judge.

Allen A. Vogler and Jane M. Vogler appeal the granting of a summary judgment in favor of Dr. Pedro R. Dominguez and Deaconess Hospital in their action against the doctor and hospital for medical malpractice. We affirm as to the hospital but reverse as to Dr. Dominguez.

Allen Vogler underwent surgery at Deaconess Hospital on October 16, 1989 for the purpose of repairing a cerebrospinal fluid leak which had resulted from a fall. Following the surgery, which was performed by Dr. Dominguez, Vogler experienced a loss of motor function and pain in the left arm. Subsequently, doctors diagnosed the condition of Vogler's left arm as a brachial plexus stretch, i.e. a stretch injury to the nerves in the upper brachial plexus. The Voglers allege in their complaint against Dr. Dominguez and the hospital that the brachial plexus stretch condition suffered by Vogler proximately resulted from the negligent placement or manipulation of his body while he was undergoing surgery or in recovery following the surgery while Vogler was in the exclusive control of the defendants, their agents or employees. The Voglers did not name as defendants the neurosurgeon who assisted Dr. Dominguez, the anesthesiologist, or a physician's assistant.

In summary judgment proceedings, the trial court is called upon to derive the matters placed in issue from the pleadings and to examine the forms of admissible evidence sanctioned by Ind.Trial Rule 56(C) which have been made available by the parties. The probative value of each piece of evidence is then to be determined without setting weight or credibility. Rational assertions of fact and reasonable inferences therefrom are deemed to be true. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 440. If, when from this viewpoint, there is no genuine issue of material fact, judgment as a matter of law may then be appropriate for a party. Upon review of a grant of summary judgment, the appellate court has before it the same materials that were before the trial court and follows the same process. *Id.*

On appeal, a trial court's grant of summary judgment is clothed with a presumption of validity. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434 citing *Indiana Depart. of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1312–13. The appellant bears the burden of proving that the trial court erred in determining from the designated evidentiary material that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* On review, any doubt about the existence of a fact or the reasonable inference to be drawn from it must be resolved in favor of the non-moving party. *Allied Resin Corp. v. Waltz* (1991), Ind., 574 N.E.2d 913. This court may not reverse a summary judgment on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were specifically designated to the trial court. *Id.;* Ind.Trial Rule 56(C). The identification of material facts and relevant evidence contained in appropriate T.R. 56(C) supporting materials through a summary judgment brief complies with the designation requirement of T.R. 56(C). *See Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 416 n. 4.

The hospital argued in its motion for summary judgment that, as established by the uncontroverted facts, the Voglers did not have sufficient evidence to establish negligence on the part of the hospital and could not establish a proper foundation for res ipsa loquitur. In support of its motion, the hospital designated the complaint, "Plaintiffs' Specifications of Negligence," the deposition of Dr. David Seligson, an

orthopedic surgeon, the affidavits of the surgical nursing staff and Dr. Dominguez, and all documents designated by Dr. Dominguez. Dr. Dominguez designated the same materials but in addition relied upon the June 7, 1990, opinion letter of Dr. Seligson and the deposition of Dr. Ronald Sowa, an orthopedic surgeon.

In response to the defendants' motions for summary judgment, the Voglers filed a brief in opposition to the motion for summary judgment in which they identified the opinions of Dr. Seligson, stated in his deposition that, to a reasonable medical probability, the injury sustained by Allen Vogler was caused by the position of Vogler's body during surgery; the alternative causes suggested by other physicians were only possible and not probable and could not have produced the injury; and reasonably prudent health care providers who perform surgery of this nature would not have nerve palsies in their patients following surgery but would by the positioning of the patient, or by the precautions taken, with or without nerve monitoring in the extremities, complete such a surgery without a nerve palsy and that therefore, the standard of care must have been breached. The Voglers also filed the affidavits of Dr. Seligson and Dr. Steven J. Reiss, a neurosurgeon. In his affidavit, Dr. Seligson opined that the brachial plexis injury sustained by Allen Vogler was not due to a viral infection and that while the anesthesiologist often assists in positioning a patient, ultimate responsibility for the positioning of the head and shoulders of a patient during a right frontal craniotomy is the duty of the operating surgeon. In his affidavit, Dr. Reiss avers that the injury to Allen Vogler's left shoulder and arm is not an expected or acceptable risk of a right frontal craniotomy; that the injury was not due to a viral infection; and that the position of the patient in a right frontal cranio-

tomy performed with the use of Mayfield pins is ultimately the responsibility and duty of the operating neurosurgeon. Dr. Reiss averred that his opinions were made to a reasonable degree of medical certainty and were based on his training and experience as an operating neurosurgeon performing surgeries of the type which Allen Vogler underwent on October 16, 1989.[1]

The law requires that a physician treating a patient possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances. *Culbertson v. Mernitz* (1992), Ind., 602 N.E.2d 98, 100 n. 4; *Vergara v. Doan* (1992), Ind., 593 N.E.2d 185, 187. Generally, in order for a lay jury to know whether a physician complied with the legally prescribed standard of care, the parties must present expert testimony to establish what a reasonably prudent physician would or would not have done in treating a patient. *Id.*

Neither of the defendants has questioned Dr. Seligson's qualifications to form and express an opinion upon the applicable standard of care. An orthopedic surgeon specializes in the diagnosis and treatment of the diseases and conditions of the bones, joints, and nerves including nerve palsies. Rather, Dr. Dominguez maintains that the Voglers have failed to establish that Dr. Seligson is in fact familiar with and competent to testify to the appropriate standard of care to be applied to a neurosurgeon who performs a right frontal craniotomy.

Dr. Dominguez points to Dr. Seligson's inability to define the term "standard of care" and his use of terms during his deposition, which Dr. Dominguez argues, demonstrates that he is misapplying the stan-

---

1. Neither defendant attacks the sufficiency of Dr. Reiss' affidavit as it relates to his understanding of the standard of care. However, inasmuch as Dr. Seligson's deposition provides evidence which creates a genuine issue of material fact, and we hold that it sufficiently establishes Dr. Seligson's familiarity with the standard of care applicable to a neurosurgeon under the same or similar circumstances, we do not rely upon Dr. Reiss' affidavit for the purpose of establishing the applicable standard of care. However, Dr. Reiss' affidavit will be considered along with all of the other designated evidence insofar as it constitutes relevant evidence on the elements of res ipsa loquitur.

dard or applying the wrong standard. At one point in his deposition, Dr. Seligson admitted that he did not know the standard of care and could not specify what a reasonably prudent surgeon would or would not have done under the same or similar circumstances. Dr. Seligson testified that he was only familiar with the surgery performed on Allen Vogler in a general sense, and because he was not a neurosurgeon, did not know the specific details. Dr. Seligson also referred to the expectations of the public rather than those of the medical community.

Nonetheless, the same deposition provides evidence that Dr. Seligson does in fact know from his experience, education and training, the degree of care, skill and proficiency exercised by reasonably careful, skillful and prudent neurosurgeons such as Dr. Dominguez under the same or similar circumstances, and that a nerve palsy does not result when such care, skill and proficiency are used. Dr. Seligson testified that as an intern in surgery and as a senior registrar in neurosurgery in 1972 or 1973, he had performed more than twenty frontal craniotomies (R. 703); that there are operations on the brain which carry with them a risk of palsy but in an operation such as Allen Vogler had, it would not be expected that he would wake up with dysfunction of the arm (R. 724); that such an expectation would hold for specialists throughout the country (R. 695); that something happened to Allen Vogler which could have been prevented by reasonably prudent health care professionals (R. 742); that the conduct of the person or persons who performed the surgery was not reasonable and prudent (R. 742); and that reasonably prudent surgical experts would, by positioning and arrangement of the patient during surgery or by precautions taken, complete such a procedure without a nerve palsy. (R. 696). Dr. Seligson also opined that the nerve palsy suffered by Allen Vogler was the net result in some form of the positioning of the patient during the operative procedure which created a stretch on the nerves as they leave the spinal cord through the neck into the upper arm.

When examining the sufficiency of an affidavit from a medical expert in the context of summary judgment proceedings, this court has held that the bare assertion of the affiant that he is familiar with the applicable standard of care is adequate to resist summary judgment. *See Yang v. Stafford* (1987), Ind.App., 515 N.E.2d 1157, *trans. denied. See also Summit Bank v. Panos* (1991), Ind.App., 570 N.E.2d 960, *trans. denied; Kopec v. Memorial Hospital* (1990), Ind.App., 557 N.E.2d 1367, *trans. denied.* The specific knowledge of an expert witness is neither determinative of the witness' qualifications as an expert nor of the admissibility of his opinion into evidence. *Id.* A witness' competency is determined by his knowledge of the subject matter generally; his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion. *Id.* Therefore, to the extent that Dr. Dominguez and the hospital are arguing that the testimony of Dr. Seligson does not establish the standard of care because of Dr. Seligson's inability to detail with certainty the conduct which would meet the standard of care, their argument is without merit. And, while Dr. Seligson opined that a nerve palsy is not a risk of a frontal craniotomy expected by the public, the reasonable inference of his testimony as a whole, which is favorable to the non-movant, is that a nerve palsy is not a result expected or accepted by the medical community either; it may be prevented by the exercise of reasonable prudence.

The hospital argues that the Voglers have failed to designate any evidence in the record establishing negligence on the part of the hospital. Dr. Seligson in fact testified in his deposition that he could not determine precisely the person or persons whose conduct failed to meet the standard of care and that his opinion that the standard of care had been breached was therefore not limited only to the surgeon but to others who were responsible for what "should take place as the patient is positioned and moved and carried through the operative procedure." (R. 696). But, as the hospital contends, the Voglers did not

specifically designate this evidence or the question of fact raised by it to the trial court. All of the specific references to evidentiary material contained in the Voglers' brief in opposition to the motions for summary judgment are to the negligence of the surgeon. Indiana Trial Rule 56(H) precludes a reversal of a judgment rendered on a motion for summary judgment on the ground that there is a genuine issue of material fact "unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." The rule requiring designation has been strictly applied. *See Rosi,* 615 N.E.2d 431. We therefore must agree with the hospital that the Voglers have failed to come forward with expert testimony establishing a breach of the standard of care applicable to the hospital.

■ However, with respect to the negligence of the hospital, the Voglers have also argued the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur is a rule of evidence which allows an inference of negligence to be drawn from certain surrounding facts. *Merriman v. Kraft* (1969), 253 Ind. 58, 68, 249 N.E.2d 485; *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.* (1982), Ind. App., 437 N.E.2d 1360, 1365. Application of the doctrine does not in any way depend on the standard of care imposed by law but, rather, depends entirely upon the nature of the occurrence out of which the injury arose. *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 530, 124 N.E. 737. Whether the doctrine applies in any given negligence case is a mixed question of law and fact. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924, 928.

■ Under the doctrine of res ipsa loquitur, negligence may be inferred where the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care. *New York, Chicago & St. Louis Railroad v. Henderson* (1957), 237 Ind. 456, 463, 146 N.E.2d 531. The question of law for the court to determine is whether the plaintiff has produced evidence from which a jury could reasonably find the existence of both of the underlying elements of res ipsa loquitur: exclusive control and probability of negligence. *Shull,* 477 N.E.2d at 928.

■ A plaintiff relying upon a res ipsa loquitur may show that the event or occurrence was more probably the result of negligence by relying upon common sense and experience or expert testimony. *Id.* at 927; *Carpenter v. Campbell* (1971), 149 Ind. App. 189, 271 N.E.2d 163, 194–5. The plaintiff's burden in this regard is to produce a reasonable showing that the injury was indeed one which would not ordinarily occur in the absence of proper care on the part of those who manage or maintain the instrumentality. *Shull,* 477 N.E.2d at 928.

■ As an evidentiary basis for the inference of probability of negligence, the Voglers rely upon the testimony of Dr. Seligson that the nerve palsy suffered by Allen Vogler is not an expected or accepted risk of a right frontal craniotomy but is a very unusual and infrequent complication of this type of surgery which ordinarily does not occur unless the standard of care during surgery or the recovery period has been breached. Dr. Seligson's expert opinion is corroborated by the opinion of the neurosurgeon, Dr. Reiss, who opined that a nerve palsy is not an expected or *acceptable* risk of a right frontal craniotomy. This evidence supports an inference that the nerve palsy suffered by Allen Vogler was not simply a bad result which is a calculated risk of the type of treatment given him, but is more probably due to the negligence of those in control.

■ The element of "exclusive control" is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it, *Shull,* 477 N.E.2d at 933, rather than actual physical control. *See Southern Indiana Gas & Electric Co. v. Indiana Insurance Co.* (1978), 178 Ind.App. 505, 383 N.E.2d 387. Exclusive control is satisfied if the defendant had control at the time of the alleged

negligence. *Shull*, 477 N.E.2d at 933. Exclusive control may be shared control if multiple defendants each have a nondelegable duty to use due care. *See Southern Indiana Gas & Electric Co.*, 383 N.E.2d 387.

In proving the element of exclusive control, the plaintiff is not required to eliminate with certainty all other possible causes and inferences, but must show either that the injury can be traced to a specific instrumentality or cause for which the defendant was responsible, or that the defendant was responsible for all reasonably probable causes to which the accident could be attributed. *Shull*, 477 N.E.2d at 931. This is so because proof in a res ipsa loquitur case seldom points to a single specific act or omission, *Henderson*, 237 Ind. at 468, 146 N.E.2d 531; typically, it points to several alternative explanations involving negligence without indicating which of them is more probable than the other. *Id.* Hence, a plaintiff may offer such evidence as may be available tending to show specifically the items of negligence and still rely upon the inference permitted under res ipsa loquitur. *Id.* at 470, 146 N.E.2d 531.

A number of different causes or inferences may be thus left to determination by the trier of fact, *id.*, including a general inference of negligence against one tortfeasor and evidence of specific acts of negligence against another. *Merriman v. Kraft*, 253 Ind. at 65, 249 N.E.2d 485. "There is no valid reason for forcing a plaintiff without a full knowledge of all the evidence to be presented at trial to choose which defendant he decides to pursue, or forego his right to have the doctrine of res ipsa loquitur applied." *Id.* at 66, 249 N.E.2d 485. Where all the circumstances exist which make the doctrine of res ipsa loquitur applicable, its benefits should not be lost merely because another possible tortfeasor is joined as a co-defendant. *Id.* at 65, 249 N.E.2d 485.

The evidence designated by the Voglers points to at least one specific instrumentality, in addition to the person of Mr. Vogler, over which the hospital's employees or agents shared the right or ability to control and the opportunity to exercise control with Dr. Dominguez, namely, the Mayfield head frame affixed to the operating table, which stabilized Allen Vogler's head for surgery and dictated the position of his body in relation to it. Dr. Seligson testified that in his opinion the injury to Allen Vogler's brachial nerve occurred when traction was applied between the shoulder and the head while Mr. Vogler's head was fixed in the frame. "There was either by pulling down on the arm or by pushing down on the shoulder ... traction made between the shoulder and the fixed head and this stretched the upper brachial plexus."

In addition, the testimony of Dr. Seligson establishes that the other possible causes suggested by the defendants are not probable. Dr. Dominguez averred that the nerve palsy in Allen Vogler's neck could possibly be explained by a jerk during or subsequent to recovery or simply by Mr. Vogler having laid in an awkward position in his bed. But, this view is countered by Dr. Seligson's opinion that the more likely cause of the injury was a moderate or large force placed upon the nerve as could be produced by the Mayfield head frame. Dr. Dominguez opined that the palsy could be explained as an "idiopathic brachial plexus neuropathy such as a neuralgic amyotrophy or Parsonage–Turner syndrome, which frequently follows a viral illness, inoculations and surgical procedures but is not a result of a stretch injury or local trauma." Dr. Seligson considered the possibility of such an inflammation of the nerves, the cause of which is unknown, but opined that the circumstances presented only "a very, very small chance" of a neuralgic amyotrophy, the surgery of the patient in a rigid head frame and the finding of loss in function of the upper arm being "too temporally related." Dr. Seligson eliminated the possibility that the palsy was related to an injection as well, opining that while an injection might have caused pain, it would not have caused the extent of loss of nerve function documented in the electromyographic reports. And, Dr. Seligson explained that, although a rotator cuff tear

was possible, the Magnetic Resonance Scan performed on Allen Vogler would have detected a tear of the rotator cuff. Thus, the evidence designated by the Voglers sufficiently reduces the likelihood that the nerve injury sustained by Allen Vogler had some cause in fact other than the manner in which he was positioned during surgery and affords a rational basis for concluding that the cause of the nerve injury more probably than not involved an instrumentality over which the hospital had a right or ability and opportunity to exercise control.

▇▇▇▇ Under Indiana law, a hospital owes a duty of reasonable care to its patients, and may be liable under the doctrine of respondeat superior for the negligent acts of its employees which are done within the scope of their employment. *South Bend Osteopathic Hospital, Inc. v. Phillips* (1980), Ind.App., 411 N.E.2d 387. *Accord Wright v. Carter* (1993) 622 N.E.2d 170. Moreover, the failure to recognize and report abnormalities in the treatment and condition of patients may constitute a breach of the duty of reasonable care on the part of hospital employees for which the hospital may be liable. *Brook v. St. John's Hickey Memorial Hospital* (1978), 269 Ind. 270, 380 N.E.2d 72, 74; *Poor Sisters of St. Francis Seraphy of the Perpetual Adoration v. Catron* (1982), Ind.App., 435 N.E.2d 305, 308. If a nurse or other hospital employee fails to report changes in a patient's condition and/or question a doctor's orders when they are not in accord with standard medical practice and the omission results in injury to the patient, the hospital will be liable for its employee's negligence. *Id.*

Even so, the hospital argues that the Voglers' failure to name as defendants the surgeon who assisted Dr. Dominguez, the anesthesiologist, and the physician's assistant precludes the court from concluding that the hospital had "exclusive control." We are inclined to agree with this assertion under the circumstances of this case. We have agreed with the Voglers that under Indiana law, control may be shared where, as here, there are independent duties owed by the defendants to the plaintiff. As we

have indicated, the expert testimony offered from Dr. Seligson gives rise to an inference that the injury to Allen Vogler would not have occurred in the absence of the negligence of someone involved in the use of the Mayfield head frame or the positioning of Allen Voglers' body; yet, the question remains of identifying the negligent actor. The evidence of the defendants establishes that the anesthesiologist shares responsibility with the surgeon and plays a primary role in the positioning of the patient during a right frontal craniotomy, possibly to the exclusion of hospital employees. Thus, there is a reasonable probability that any negligence in positioning of Allen Vogler's body or in applying pressure to it may have been that of the anesthesiologist who was not made a defendant. The Voglers left this evidence as it relates to the hospital's employees unrefuted. A jury therefore cannot reasonably infer that the injury was more probably than not due to the negligence of an employee of the hospital in positioning or applying pressure to Allen Vogler's body.

▇▇▇▇ Moreover, the affidavits submitted by the hospital reflect that none of the hospital's nurses who participated in the surgery observed anything out of the ordinary or inappropriate in the surgical care of Mr. Vogler. There is no question of fact on this point; they did not know that the standard of care applicable to a right frontal craniotomy was being violated. Whether the hospital's nurses should have known the standard of care which applies during a right frontal craniotomy raises a question about the standard of care applicable to a surgical nurse, something which is not a matter of common knowledge and which can only be resolved by resort to expert testimony.

The evidence offered by the Voglers does not supply this missing element. Thus, while the Voglers have otherwise offered sufficient evidence to permit an inference of negligence based upon a res ipsa loquitur and a jury might have been permitted to conclude under the evidence that, regardless of the actor actually responsible for applying the traction to Allen Vogler's

neck and shoulders, or the malpositioning of his body, the injury would not have occurred in the absence of the negligence of the hospital's employees in failing to recognize that the standard of care was being violated by the surgeon or anesthesiologist, the jury cannot without the aid of expert testimony determine whether the nurses should have known that the standard of care for a right frontal craniotomy was being violated.

Accordingly, it is our conclusion that the Voglers have failed to come forward with evidence warranting an inference of negligence on the part of the hospital. In the absence of expert evidence establishing the hospital employees' standard of care, we must conclude that the Voglers have failed to establish that the hospital is not entitled to a judgment as a matter of law. Summary judgment was therefore properly entered in favor of the hospital.

However, we have concluded that the Voglers have presented expert testimony establishing the standard of care applicable to Dr. Dominguez. The judgment in his favor should therefore be reversed.

Judgment affirmed in part and reversed in part.

BAKER, J., concurs.

SULLIVAN, J., concurs in result.