864 N.E.2d 442 (2007)
In re the PATERNITY OF H.R.M.
Steven Gaddie, Appellant-Plaintiff,
v.
Rachel Manlief, Appellee-Defendant.
No. 16A04-0610-JV-569.
Court of Appeals of Indiana.
April 20, 2007.
*444 David M. Hooper, Thomasson & Thomasson & Jackson, P.C., Columbus, IN, Attorney for Appellant.
J. Michael Kummerer, Columbus, IN, Attorney for Appellee.

OPINION
ROBB, Judge.

Case Summary and Issues
Steven R. Gaddie appeals the trial court's order granting Rachel D. Manlief's motion to modify visitation. Gaddie raises two issues, which we restate as whether the trial court abused its discretion in allowing a clinical social worker to testify regarding statements made to her by a child during interviews, and whether the trial court abused its discretion in admitting a "Family Support Specialist's" notes of home visitations. Concluding that the social worker's testimony and the family specialist's notes both constitute hearsay, and that neither falls within an exception to the rule against the admission of hearsay, we reverse and remand with instructions that the trial court conduct another hearing.

*445 Facts and Procedural History

Gaddie and Manlief are the parents of H.R.M., who was born in February 2001. Gaddie's paternity was established pursuant to an August 27, 2001, Order, in which Gaddie was allowed "reasonable visitation . . . to be agreed upon between the parties." Appellant's Appendix at 357. Gaddie and Manlief have had some trouble agreeing upon this visitation, as both parties have previously filed motions to modify visitation, and Gaddie has filed multiple applications requesting that the court find Manlief in contempt for violating his visitation rights. Manlief filed the instant motion to modify visitation on May 3, 2006. The basis for this motion was Manlief's assertion that Gaddie had sexually abused H.R.M. In response to Manlief's motion, Gaddie filed another application requesting the trial court find Manlief in contempt and order her to execute a jail sentence. The trial court held a hearing on this matter in July 2006.
At this hearing, Manlief, Gaddie, and Lola Smith Gaddie, Gaddie's current wife, testified. Significant portions of this testimony dealt with Manlief's claim that Lola was not present during much of Gaddie's visitation time with H.R.M. Manlief supported this allegation with a videotape she had made of Lola and Gaddie's vehicles on a Wednesday night. Manlief also made much of some aluminum window insulation that Gaddie uses on his home.[1] Manlief claims that Gaddie uses this insulation so that people cannot see him molesting H.R.M. Gaddie claims that he uses this material to block out light, because he works second shift, and to reduce his energy bill.
Laurie Fowler, a self-employed social worker, testified over Gaddie's objection as to what H.R.M. had told her during interviews, which had taken place on July 3, 10, and 17, 2006, within a month of the hearing. Fowler testified that H.R.M. described several episodes of sexual abuse and exposure to sexually explicit material occurring at Gaddie's home.
Manlief also introduced over Gaddie's objection documents containing notes made by Anita Martin, a Family Support Specialist at Healthy Families of Bartholomew County, during visits Martin had made to Manlief's home. These documents contain Martin's observations of H.R.M.'s behavior during her visits, and her relation of a conversation in which both Manlief and H.R.M. indicated that Gaddie engaged in inappropriate sexual conduct during his visits with H.R.M. Along with these documents, Manlief submitted an "Affidavit of Business Records Custodian" signed by Martin.
On September 7, 2006, the trial court issued an Order denying Gaddie's application, and granting Manlief's motion. The trial court ordered that Gaddie's visitation with H.R.M. should now be supervised, and that Gaddie should pay the costs associated with such supervision. Gaddie now appeals.

Discussion and Decision

I. Standard of Review
We review a trial court's admission of evidence for an abuse of discretion. Leisure v. Wheeler, 828 N.E.2d 409, 417 (Ind. Ct.App.2005). We will conclude that a trial court abused its discretion when its decision is clearly erroneous, or against the logic and effect of the facts and circumstances before the court. Id. The fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we conclude the admission affected a party's substantial *446 rights. In re W.B., 772 N.E.2d 522, 533 (Ind.Ct.App.2002); Ind. Evid. Rule 103(a).

II. Statements Made for the Purposes of Medical Diagnosis or Treatment
Under Indiana Evidence Rule 803(4), otherwise inadmissible hearsay may be admitted if it consists of statements made for the purposes of medical treatment.[2] The basis for this rule is the assumption that people seeking medical treatment have a strong incentive to tell the truth, and that therefore such statements are reliable. See McClain v. State, 675 N.E.2d 329, 331 (Ind.1996). This rule encompasses statements made to non-physicians so long as the declarant makes the statements to advance a medical diagnosis or treatment. Id. ("`Under the exception the statement need not have been made to a physician. Statements made to hospital attendants, ambulance drivers or even family members might be included.'" (quoting Fed. Rule Evid. 803(4) Advisory Committee Note)). Our supreme court has specifically held that statements made to family therapists may be admitted pursuant to this rule, assuming a proper showing of reliability. Id. As Fowler is a clinical social worker specializing in working with abused children, we conclude that statements made to her fall within the scope of Indiana Evidence Rule 803(4).
In determining whether a statement is admissible pursuant to this rule, courts engage in a two part test: "1) is the declarant motivated to provide truthful information in order to promote diagnosis and treatment; and 2) is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." Id.
Gaddie makes no argument that the statements made by H.R.M. fail the second prong of this test, and instead argues that the statements fail the first prong because no evidence was introduced indicating that H.R.M. was motivated to provide truthful information. Under this first prong, "the declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment." Id. Although sometimes this subjective belief may be readily inferred from the circumstances, "[w]here that inference is not obvious, as in this case involving a young child brought to treatment by someone else, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." Id.
In McClain, the child had testified that the therapist was his "counselor," and that he talked to this counselor about what the abuser did to him. Our supreme court found a lack of evidence indicating that the child either sought the therapist's help or understood that he was receiving medical treatment. Id. Therefore, the therapist's testimony did not fall within the medical diagnosis exception to hearsay, and was inadmissible. Id.
Similarly, in W.B., 772 N.E.2d at 533, we found a lack of evidence indicating that children were motivated to provide truthful information to their therapist. Instead, we concluded the evidence indicated that the children were unaware of their therapist's professional purpose, and that therefore, the therapist's testimony regarding *447 the children's statements was inadmissible. Id.
On the other hand, in Cooper v. State, 714 N.E.2d 689 (Ind.Ct.App.1999), trans. denied, we concluded that a nurse's testimony regarding statements made to her by a child in the emergency room was admissible. In Cooper, the nurse testified at length as to her interaction with the child, indicating that she repeatedly told the child she was in a hospital and explained the purpose of the examination and interview. Id. at 692-93. We concluded that this testimony indicated the child knew she was in the emergency room to discuss and be treated for sexual abuse, and that she understood the role of the nurse in this treatment. Id. at 693. Therefore, the first prong of the test was met, and the nurse's testimony was admissible under the medical diagnosis exception to hearsay. Id.
In this case, the record contains no indication that H.R.M. had the requisite motivation to tell the truth, as no evidence indicates that she knew Fowler's role or that she was being interviewed for the purpose of medical diagnosis. Although Fowler testified that the purpose of the interviews was "to assist with [H.R.M.] in working with the issues and preparing an individualized treatment plan to assist her with what has happened," the record is devoid of evidence that H.R.M. knew that she was there for this purpose. Like in McClain and W.B., H.R.M. is a child whom a third party brought to treatment. Unlike in Cooper, however, Fowler's testimony did not indicate that she explained to H.R.M. the purpose of the interview, or that H.R.M. knew she was at the interview to facilitate medical diagnosis and treatment. Part of Fowler's testimony actually supports a conclusion that H.R.M. was not aware of the nature of the interview. In response to a question as to whether it is uncommon for a child to come up to her and volunteer information in the waiting room, Fowler testified, "It's not uncommon. They don't know that you have to wait to go to the office where there's privacy and confidentiality to make statements." Tr. at 124.
We note that Fowler's testimony related not only that H.R.M. told her about the sexual abuse and exposure to explicit material, but also the identity of the perpetrator. We wish to point out that identity is rarely admissible under the medical diagnosis exception to hearsay, as identity is not normally relevant to a medical diagnosis or treatment. See Beverly v. State, 801 N.E.2d 1254, 1259 (Ind.Ct.App. 2004), trans. denied. However, in the context of physical or sexual child abuse, "knowledge of the perpetrator is important to the treatment of psychological injuries that may relate to the identity of the perpetrator and to the removal of the child from the abuser's custody or control." Nash v. State, 754 N.E.2d 1021, 1024 (Ind. Ct.App.2001), trans. denied (quoting 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 278 at n. 9). Therefore, in child abuse cases, "trial courts may properly exercise their discretion in admitting statements regarding identity of the perpetrator." Id. at 1025. Because we hold that all of Fowler's testimony regarding what H.R.M. told her is inadmissible hearsay, we need not specifically address whether the portions of her testimony identifying Gaddie would be admissible.
Because we conclude that the evidence does not demonstrate that H.R.M. was subjectively aware of Fowler's role, Fowler's testimony relating H.R.M.'s statements does not fall under the medical diagnosis exception to hearsay. Therefore, the trial court abused its discretion in admitting this testimony.

*448 III. Business Records
Under Indiana Evidence Rule 803(6), otherwise inadmissible hearsay may be admitted if it consists of records of regularly conducted business activity.[3] Such evidence must be supported by testimony or an affidavit indicating that such records were kept in the normal course of business, and that it was the regular practice of the business to make such records. Id. Under Indiana Evidence Rule 902(9), records of regularly conducted business falling within the scope of Rule 803(6) may be authenticated if:
the custodian thereof or another qualified person certifies under oath [that the record] (i) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters; (ii) is kept in the course of the regularly conducted activity, and (iii) was made by the regularly conducted activity as a regular practice.
(Emphasis added). Gaddie argues that the affidavit accompanying the business records is insufficient, as it does not indicate that the statements were certified under oath. We agree.
Indiana Trial Rule 11(B) indicates:
When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:
"I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.
 (Signed) ________"
As the language of Rule 11 indicates, "[a]lthough Trial Rule 11 provides one method for binding an affiant to his oath, compliance with its provisions is not required." Jordan v. Deery, 609 N.E.2d 1104, 1110 (Ind.1993). Therefore, the failure of Martin's affidavit to track the language in Rule 11 is not in itself fatal.
"An affidavit has been defined as a written statement of fact which is sworn to as the truth before an authorized officer." Id. (emphasis added). "The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for a perjury prosecution." Id.
Under Indiana Evidence Rule 902(9), it is required that the affiant "certifies under oath" the statements made in the affidavit. Requiring an affiant to "certify" his or her statements is substantially the same as requiring an affiant to "verify" his or her statements. See Black's Law Dictionary 220 (7th ed.1999) (defining "certify" as "[t]o authenticate or verify in writing"). In Bentz v. Judd, 714 N.E.2d 203, 204-05 (Ind.Ct.App.1999), we held that the statement: "Comes now the Petitioner, Charles *449 E. Bentz, being first duly sworn upon his oath says as follows . . ." was insufficient to constitute a verification. As did the Bentz court, we note that our supreme court in Austin v. Sanders, 492 N.E.2d 8, 10 (Ind.1986), held the statement, "I affirm under penalty of perjury that the statements in the foregoing Petition are true and correct to the best of my information and belief," was sufficient to constitute a verification even though the affidavit was not notarized. We also note that in Austin, our supreme court distinguished Gossard v. Vawter, 215 Ind. 581, 21 N.E.2d 416 (1939), in which our supreme court held somewhat similar language insufficient. 492 N.E.2d at 10. In Gossard, the purported affiant stated: "Comes now Garrett W. Gossard, contestor in the above captioned proceedings, who, being first duly sworn, upon his oath says." 215 Ind. at 582, 21 N.E.2d at 416. In Austin, our supreme court stated that the purported affiant in Gossard "had not verified the truth of his petition in any way, sworn or unsworn. Under any definition of the word `verify' [his petition] was eligible for dismissal." 492 N.E.2d at 9.
Manlief argues that Bentz is not applicable because the petition in that case "was made pursuant to a strict statutory scheme and . . . [n]o specified form of verification of the affidavit is required of the business records custodian." Appellee's Brief at 10. However, the statute at issue in Bentz did not specify the form of verification,[4] and we analyzed the sufficiency of the affidavit under Trial Rule 11(B) and the common law relating to affidavits. 714 N.E.2d at 204-05. Also, the requirement that the affidavit to support a business record be certified under oath comes from Indiana Evidence Rule 902(9). This evidentiary requirement is substantially similar to the statutory requirement at issue in Gossard and Bentz, that the petition be "verified." See Gossard, 215 Ind. at 584, 21 N.E.2d at 417 ("The act under which [the case] was brought . . . requires that such petition shall be verified by the contestor."); Bentz, 714 N.E.2d at 204 (noting that "[b]y statute, a candidate seeking a recount `must file a verified petition' within seven days of election day"). Therefore, Bentz and Gossard are both applicable to the situation at hand.
The purported affidavit in this case contains the phrase: "I, Anita Martin (printed name), being duly sworn, state as follows." Appellant's App. at 392. However, the document does not indicate before whom Martin swore, to what she swore, that she took an oath, or that Martin made these statements under the penalty for perjury. Similar language was held insufficient to constitute verification in Gossard (as noted in Austin) and Bentz. Not only does the document fail to indicate that Martin took an oath before an officer, but also Manlief failed to introduce any evidence that an oath was made, thereby rendering the purported affidavit merely an unsworn statement. See Tannehill ex rel. Podgorski v. Reddy, 633 N.E.2d 318, 322 (Ind.Ct.App. 1994), trans. denied; Pappas v. State, 179 Ind.App. 547, 551-52, 386 N.E.2d 718, 721 (1979). Without any of these indications, we conclude that the document is inadequate to subject Martin to prosecution for making a false affidavit, and therefore, insufficient to support the accompanying business records.
In so holding, we recognize that in State ex rel. Ind. State Bd. of Dental Examiners v. Judd, 554 N.E.2d 829, 832 (Ind.Ct.App. 1990), we held that the statement, "Comes now James T. Judd, D.D.A. and being duly sworn upon his oath, alleges and says," sufficient *450 to constitute verification. In so holding we relied upon Jaske v. State, 539 N.E.2d 492, 495 (Ind.Ct.App.1989), reh'g granted, vacated on other grounds, 553 N.E.2d 181 (Ind.Ct.App.1990), trans. denied, in which we stated, "Jaske swore his statement under oath administered by a notary," and, "Jaske's employment of the words `sworn upon . . . oath,' followed by `says' to preface his subsequent statements, is an assertion of the truth of his statements under penalties of perjury." Judd, 554 N.E.2d at 831-32. Judd does not indicate whether or not the affidavit at issue was notarized, but its reliance on the language from Jaske at least suggests as much. Even if the affidavit in Judd was not notarized, the language "duly sworn upon his oath, alleges and says," provides a stronger intention to be bound by the penalty for perjury than the language in the purported affidavit here: "being duly sworn." Finally, to any extent that Judd conflicts with Bentz and Gossard, as Gossard is a decision of our supreme court, we would be bound to follow it. Terry v. State, 857 N.E.2d 396, 409 (Ind.Ct.App. 2006), trans. denied.
Lastly, Manlief argues that the affidavit is sufficient because it tracks, virtually verbatim, the sample business records affidavit set forth in the Indiana Trial Evidence Manual § 46.14(A) (5th Ed.).[5] We agree that Martin's affidavit is basically indistinguishable from the Trial Manual's example. However, Indiana case law carries a higher precedential value than treatises or other secondary sources. We also note that our holding does not indicate that the Trial Manual incorrectly represents the law. We interpret the Trial Manual's sample as an example of how to satisfy Indiana Evidence Rule 902(9)'s three substantive requirements for a business records affidavit, and not as an example of how to comply with the rule's requirement that the affidavit be certified under oath. As support for this interpretation, we note that the sample affidavit does not contain a signature line for the affiant.
We conclude that Martin's purported affidavit does not indicate that she certified her statements under oath, and therefore the purported affidavit is insufficient under Indiana Evidence Rule 902(9). Therefore, the trial court abused its discretion in admitting the business records.[6]

IV. Harmless Error
As previously noted, the erroneous admission of evidence will not warrant reversal unless the admission affected Gaddie's substantial rights. Also, where the trier of fact is the trial court, and not a jury, "the harm caused by evidentiary error is lessened and we will reverse only when the court's judgment has apparently or obviously been infected by erroneously admitted evidence." Apter v. Ross, 781 N.E.2d 744, 759 (Ind.Ct.App.2003), trans. denied. Therefore, Manlief argues that any error in the admission of Fowler's testimony or Martin's records was harmless, as many of the same allegations were contained in Manlief's answers to interrogatories, which Gaddie introduced into evidence.
In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as *451 such admission does not affect a party's substantial rights. See In re Adoption of M.A.S., 815 N.E.2d 216, 222 (Ind.Ct.App. 2004). Cumulative evidence is "`[a]dditional evidence that supports a fact established by the existing evidence (especially that which does not need further support).'" Witte v. Mundy ex rel. Mundy, 820 N.E.2d 128, 135 (Ind.2005) (quoting Black's Law Dictionary 596 (8th ed.2004)). Additionally, to be considered cumulative, evidence should be of the same kind or character. See Union Cent. Life Ins. Co. v. Loughmiller, 33 Ind.App. 309, 314-15, 69 N.E. 264, 266 (1903); Black's Law Dictionary 577 (7th ed.1999) (cumulative evidence is evidence "of the same character as existing evidence"). That is, evidence will not be considered cumulative if "[i]t tends to prove the same facts, but in a materially different way." Union Cent. Life Ins. Co., 33 Ind.App. at 315, 69 N.E. at 266.
Depending on the facts of a case, testimony that gives credibility to another witness's testimony may not be considered cumulative. See Greenboam v. State, 766 N.E.2d 1247, 1256 (Ind.Ct.App. 2002), trans. denied (holding that erroneous admission of testimony was not harmless because the witness's testimony that the defendant had previously molested her and the victim "undoubtedly gave credibility to [the victim's] testimony."). Also, evidence is not cumulative when the other evidence tending to prove the same facts is clearly not persuasive and therefore requires further support. Witte, 820 N.E.2d at 135 ("We think it obvious that the admission by an eight-year-old child on cross-examination that someone did not do `anything wrong' in an accident that occurred three years earlier is not very persuasive. The child's admission surely requires `further support.'"). In the same vein, our supreme court has held the exclusion of a witness's testimony was not harmless even though the defendant had testified to the same facts because the additional testimony "would have added a different perspective to the defendant's version of the events and reinforced his account." S.T. v. State, 764 N.E.2d 632, 636 (Ind.2002) (quoting S.T. v. State, 733 N.E.2d 937, 944 (Ind.Ct.App.2000) (Sullivan, J., dissenting), vacated by S.T., 764 N.E.2d 632). Ultimately, when determining whether evidence is cumulative of other evidence, and its erroneous admission was therefore harmless, we must determine whether "admission of the improper evidence is a serious candidate to influence the trier of fact." Witte, 820 N.E.2d at 135.
Here, Manlief's Response to Interrogatories does contain many of the same allegations as Fowler's testimony and Martin's notes. However, in the context of the hearing, Gaddie introduced Manlief's responses "to show all of the outrageous allegations made by [Manlief], her use of capital letters, bold face type, and descriptive narratives to illustrate that her story does not make sense." Appellant's Reply Brief at 6. Therefore, unlike Fowler's testimony and Martin's notes, which Manlief obviously introduced in order to get H.R.M.'s allegations before the trial court, Gaddie introduced Manlief's responses to demonstrate Manlief's ill will towards Gaddie, and her bias and motivation to coach H.R.M. to falsify allegations of sexual abuse. Notably, Manlief objected to the admission of her responses at the hearing, providing support for Gaddie's argument that these responses should be considered beneficial to his case, and not a justification for deeming the erroneous admission of evidence harmless. Also, the allegations of a party-opponent hardly carry the same degree of reliability or weight as the testimony of a therapist or the purported records of a family care specialist.
*452 As the trial court in this case did not enter findings or conclusions, it is impossible to say with certainty that the erroneously admitted evidence influenced the trial court's decision. However, although we are reluctant to reverse a decision rendered by a trial court due to the erroneous admission of evidence, we must conclude that in this case, based on the nature of the erroneously admitted evidence, and the content and context of Manlief's responses, the admission of Fowler's testimony and Martin's notes had an apparent effect on the trial court's decision. Therefore, we cannot say that the error in admitting the evidence was harmless.

Conclusion
We conclude that Fowler's testimony regarding H.R.M.'s statements was inadmissible hearsay not falling within the exception for statements made in the furtherance of medical treatment. We further hold that Martin's notes were not admissible pursuant to the business records exception to hearsay based on the insufficiency of the supporting affidavit. Finally, we conclude that the admission of this evidence was not harmless error.
Reversed and remanded.
BAKER, C.J., and DARDEN, J., concur.
NOTES
[1] Apparently, Manlief also used this material on her own home at one point.
[2] The text of the rule indicates that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Ind. Evid. Rule 803(4).
[3] In full, the rule excepts from the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Ind. Evid. Rule 803(6).
[4] See Ind.Code § 3-12-6-2(a) ("A candidate who desires a recount of votes must file a verified petition no later than noon fourteen (14) days after election day.").
[5] Manlief cites the 4th edition, in which the sample affidavit appears in section 45.15.
[6] Because we rule the evidence inadmissible on this basis, we do not reach the issues of whether the business records contain double hearsay, or whether these records are even the type of business records contemplated by Indiana Evidence Rule 803(6). See generally In re Termination of Parent-Child Relationship of E.T., 808 N.E.2d 639 (Ind.2004).