## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

08/31/2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of:<br><br>J.B. (Minor Child)<br><br>and<br><br>S.B. (Father),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | August 31, 2017<br><br>Court of Appeals Case No. 49A04-1705-JT-1027<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn A. Moores, Judge<br>The Honorable Larry E. Bradley, Magistrate<br><br>Trial Court Cause No. 49D09-1604-JT-388 |

**Bradford, Judge.**

# Case Summary

[1]  Appellant-Respondent S.B. ("Father") appeals the juvenile court's order terminating his parental rights to J.B. Prior to the termination of Father's parental rights, J.B. had twice been found to be a child in need of services ("CHINS"), most recently on March 4, 2015. Father has not seen J.B. since 2012, and has admittedly been incarcerated "pretty much" since that time. Father's current release date is scheduled for July of 2020.

[2]  On April 26, 2016, Appellee-Petition the Department of Child Services ("DCS") filed a petition seeking the termination of Father's parental rights to J.B. Following an evidentiary hearing, the juvenile court issued an order granting DCS's petition. On appeal, Father challenges the juvenile court's order, arguing that the juvenile court abused its discretion in admitting certain evidence. We affirm.

# Facts and Procedural History

[3]  A.C. ("Mother") and Father are the biological parents of J.B., who was born on August 4, 2007.[1] DCS first became involved with J.B. and her parents in February of 2008. J.B. was adjudicated a CHINS in June of 2008. When this

---

[1] The termination of Mother's parental rights to J.B. are not at issue in this appeal.

CHINS case began, Father was incarcerated, but was subsequently released. J.B. was ultimately returned to her parents care after "services were completed successfully." Tr. Vol. II, p. 19. Thereafter, Mother, Father, and J.B. lived together as a family unit "for about three years from 2008 to 2011." Tr. Vol. II, p. 20.

[4] On October 14, 2014, DCS again alleged that J.B. was a CHINS. J.B. was adjudicated a CHINS in March of 2015. Father was incarcerated throughout the entirety of the second CHINS proceedings. J.B. has remained out of her Mother's care since October of 2014. Father last saw J.B. in 2012.

[5] On April 26, 2016, DCS filed a petition seeking the termination of Father's parental rights to J.B. The juvenile court conducted an evidentiary hearing on DCS's petition on April 17, 2017. At the time of the evidentiary hearing, Father was incarcerated in the Westville Correctional Facility with a tentative scheduled release date of July 26, 2020.[2]

[6] During the evidentiary hearing, the juvenile court heard evidence relating to Father's criminal history, with Father admitting that "I've been pretty much locked up since 2012." Tr. Vol. II, p. 7. Father's criminal history includes prior convictions for Class D felony possession of methamphetamine, Class D felony

---

[2] Father claimed that if he completed certain programming, he could possibly be released to community corrections as early as February of 2018. Father indicated, however, that he has not taken the steps necessary to complete this programming, which would take at least nine months.

theft, two counts of Class C felony burglary, and Level 6 felony failure to return to a lawful detention facility. He has also been found to be a habitual offender.

[7] The juvenile court also heard evidence that Father has not seen J.B. and had no contact with her since 2014. DCS indicated that J.B. has suffered "trauma from the lack of stability in her life at such a young age" and would benefit from the stability that would come with the permanency of adoption. Tr. Vol. II, p. 34. J.B. has blossomed in her current foster placement and has a close bond with her current foster parents, who wish to adopt her. Multiple service provides testified that adoption was in J.B.'s best interests.

[8] At the conclusion of the evidentiary hearing, the juvenile court took the matter under advisement. It subsequently issued an order terminating Father's parental rights to J.B. on April 25, 2017. This appeal follows.

# Discussion and Decision

[9] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his child. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore,

parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

[10] The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id*. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

[11] In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

[12] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it.

*Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

[13] In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
> > (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
> > (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
> > (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)  termination is in the best interests of the child; and

(D)  there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

# Admission of Evidence of Prior Arrests

[14]  In challenging the juvenile court's order terminating his parental rights to J.B., Father does not challenge any of the juvenile court's findings or conclusions. Instead, Father contends that the juvenile court abused its discretion in admitting evidence of his prior arrests and charges that did not result in conviction.

## A.  Standard of Review

[15]  "The admission of evidence is entrusted to the sound discretion of the trial court." *In re A.J.*, 877 N.E.2d 805, 813 (Ind. Ct. App. 2007), *trans. denied*. An abuse of discretion only occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id*. "The fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we conclude the admission affected a party's substantial rights." *Id*.

*D.B.M. v. Ind. Dep't of Child Servs.*, 20 N.E.3d 174, 178-79 (Ind. Ct. App. 2014). "[W]here the trier of fact is the trial court, and not a jury, 'the harm caused by evidentiary error is lessened and we will reverse only when the court's judgment has apparently or obviously been infected by erroneously admitted evidence.'"

*In re Paternity of H.R.M.*, 864 N.E.2d 442, 450 (Ind. Ct. App. 2007) (quoting *Apter v. Ross*, 781 N.E.2d 744, 759 (Ind. Ct. App. 2003), *trans. denied*).

[16] "In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights." *Id.* at 450-51.

> Cumulative evidence is "'[a]dditional evidence that supports a fact established by the existing evidence (especially that which does not need further support).'" *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 135 (Ind. 2005) (quoting Black's Law Dictionary 596 (8th ed. 2004)). Additionally, to be considered cumulative, evidence should be of the same kind or character. *See Union Cent. Life Ins. Co. v. Loughmiller*, 33 Ind. App. 309, 314-15, 69 N.E. 264, 266 (1903); Black's Law Dictionary 577 (7th ed. 1999) (cumulative evidence is evidence "of the same character as existing evidence").

*Id.* at 451.

## B. Analysis

[17] One factor the juvenile court considers when deciding whether a parent's parental rights should be terminated is the parent's habitual patterns of conduct. *See A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002). "Such an evaluation assists in determining the probability of future neglect or deprivation of the child, as well as remedial possibilities." *Id.* "Based on this rule, trial courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *Id.*

[18]     In determining that there was a reasonable probability that the conditions that led to J.B.'s continued placement outside of Father's care would not be remedied, the juvenile court made the following finding:

> There is a reasonable probability that the conditions that resulted in [J.B.'s] removal and continued placement outside the home will not be remedied by her father. [Father] will be incarcerated until February of 2018 at the minimum, and would still have to successfully complete services. [Father]'s pattern of criminal activity, and not abiding by rules to stay free, leads to a reasonable conclusion that he will remain unavailable to parent in the future.

Appellant's App. Vol. II, p. 24.

[19]     In challenging the juvenile court's order terminating his parental rights to J.B., Father argues that the juvenile court abused its discretion in admitting certain evidence relating to prior arrests and charges which did not result in conviction. However, we need not address this question because the admission of such evidence, if error, was harmless given that it was cumulative of other evidence which demonstrated that Father had a pattern of criminal activity and had previously failed to comply by rules set forth to ensure his release from incarceration.

[20]     During the evidentiary hearing, the following exchange occurred between Father and counsel for DCS:

> [DCS]        And [Father] where are you currently living?
> [Father]     I'm currently incarcerated.
> [DCS]        And where is that that you're incarcerated at?

[Father]       At Westville Correctional Facility.
[DCS]          And what is your official out date?
[Father]       My official out date is 7/26/2020.
                              ****
[DCS]          And [Father] have you been incarcerated in
Department of Corrections on previous occasions?
[Father]       Yes.
[DCS]          When were those?
[Father]       I've been pretty much locked up since 2012.

Tr. Vol. II, pp. 6-7. At the time, Father was incarcerated after having been convicted of Level 6 felony failure to return to a lawful detention center and been found to be a habitual offender. Father also had prior convictions for Class D felony possession of methamphetamines, Class D felony theft, and two counts of Class C felony burglary. While the first of these convictions, the conviction for Class D felony possession of methamphetamines, occurred before DCS became involved with J.B. and Father, the remaining convictions have all occurred since that time. In addition, Father admitted during the evidentiary hearing that he continues to suffer from drug addiction issues, making his prior drug-related conviction relevant to a consideration of Father's habitual patterns of conduct.

[21]  The above-stated evidence, *i.e.*, Father's admissions and the evidence relating to his prior criminal convictions, is sufficient to support the juvenile court's finding that Father's pattern of criminal activity and failure to comply with rules set forth for his conditional release from incarceration lead to a reasonable conclusion that Father will be unable to parent in the future. The challenged evidence was merely additional evidence of the same kind and character as the

above-discussed evidence which would go to prove this fact. As such, we conclude that the admission of the challenged evidence did not affect Father's substantial rights as the challenged evidence was merely cumulative of this evidence. *See In re H.M.R.*, 864 N.E.2d at 450-51. This is especially true considering that the juvenile court, and not a jury, acted as the trier-of-fact. *Id.* at 450. Father, therefore, has failed to convince us that the admission of the challenged evidence violated his right to due process or was anything but harmless.

# Conclusion

[22] Even assuming that it was error to admit the challenged evidence during the evidentiary hearing, such error was harmless. Furthermore, Father does not challenge the sufficiency of the evidence to support the juvenile court's determination that DCS proved each of the required factors set forth in Indiana Code section 31-35-2-4(b). As such, we affirm the juvenile court's order terminating Father's parental rights to J.B.

[23] The judgment of the juvenile court is affirmed.

May, J., and Barnes, J., concur.