## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2019, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Luisa M. White
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of Lu.G. and Li.G. (Minor Children), Children in Need of Services, <br><br> and <br><br> A.G. (Mother), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | March 15, 2019 <br><br> Court of Appeals Case No. 18A-JC-1760 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Trial Court Cause Nos. 34C01-1803-JC-109, -110 |

**Crone, Judge.**

## Case Summary

[1] A.G. ("Mother") appeals the trial court's determination that her minor children, Li.G. and Lu.G. ("the Children"), are children in need of services ("CHINS"). Mother contends that the trial court abused its discretion in admitting evidence and that the evidence is insufficient to support the CHINS adjudication. Finding no reversible error in the admission of evidence and that sufficient evidence supports the CHINS adjudication, we affirm.

## Facts and Procedural History

[2] The Children were born on February 13, 2018.[1] The following day, the Indiana Department of Child Services ("DCS") received a report that the Children had been born premature at thirty-three weeks; their umbilical cord blood tests were positive for amphetamine and methamphetamine; and Mother had tested positive for methamphetamine on January 25 and February 13. In response, DCS family case manager Jana Caudill performed a preliminary assessment. During Caudill's interview of Mother on February 15, Mother stated that she used drugs in the early stages of pregnancy but stopped using at twelve weeks when she learned that she was pregnant. Mother explained that she had been using drugs because she was depressed and suicidal after her mother died in May 2017. Mother had begun therapy through Howard Community Health

---

[1] All dates are in 2018 unless otherwise indicated.

Network. Mother was unemployed, did not have stable housing, and was looking for a place to live.

[3] On March 19, DCS filed a CHINS petition, alleging that since the Children's birth, Mother had three negative drug screens but tested positive for methamphetamine on March 9 and 13; Mother denied using any substance that would result in her testing positive for methamphetamine; and Mother was still looking for housing because she could not remain at her current location for more than fourteen days. The CHINS petition also alleged that Mother's husband ("Father") was incarcerated at Pendleton Correctional Facility until June 2019. The trial court conducted an initial hearing that day and authorized the Children's removal from Mother's care.

[4] On May 7, the trial court held a factfinding hearing. Father stipulated that the Children were CHINS. Caudill testified. During her testimony, DCS introduced Exhibits 1 and 2, the records from the Children's umbilical cord drug screens. Mother objected to the exhibits based on lack of foundation, arguing that Caudill had mischaracterized the drug screens as tests of the Children themselves, but the tests were done on blood from the umbilical cords. Tr. Vol. 2 at 6-8. The trial court observed that the exhibits were accompanied by an affidavit from the custodian of the testing lab that indicated that the drug screens were conducted on umbilical cord blood. *Id*. at 7-8. The trial court concluded that the exhibits were self-authenticating and admitted them over Mother's objection. *Id*. at 8. DCS's counsel asked Caudill what the results of the Children's drug screens at birth had been, and Caudill testified that the

umbilical cord blood drug screens for both children were positive for methamphetamine. *Id.* at 8. Mother did not object.

[5] Mother also testified at the factfinding hearing. DCS's counsel asked her whether the Children tested positive for "illegal drugs" at their birth, and Mother answered that their "[umbilical] cord blood was but they were never tested." *Id.* at 13. Mother testified that she did not use illegal drugs when she was pregnant; she did not consider herself an addict; and she did not think she needed help regarding drug use. *Id.* She admitted that she had testified positive for illegal drugs twice after the Children were born but explained that since those two positive tests, she had been tested twice-weekly for drugs and had not tested positive. *Id.* at 13, 16. Mother stated that she had not had suicidal ideations since May 2017 when her mother passed away. She testified that she continued to see the therapist she had been seeing before the Children's removal and explained that the therapist was like a "patient advocate" who assists with parenting, substance abuse, or whatever she needs help with. *Id.* at 16. She also testified that she visited the Children three times a week for three hours each time, was employed, lived in a two-bedroom trailer, and had all necessary childcare supplies.

[6] At the conclusion of the factfinding hearing, the trial court found that based on the evidence submitted, DCS had met its burden of proof to show that each child was a CHINS. Citing Indiana Code Section 31-34-1-10, the trial court found it was uncontroverted that the Children were born with a controlled substance in their bodies, which includes umbilical cord tissue under the statute,

and that each child required care, treatment, and rehabilitation that is unlikely to be provided or accepted without coercive intervention of the court. On that point, the trial court stated,

> Nearly a month after the children were born, and they were born premature, they did require further medical care and hospitalization, their mother did test positive for methamphetamine twice. She's indicated in fact, in response to her counsel's questions, that she doesn't believe that she requires any treatment, doesn't believe that she requires any help from the department, would appear that unless it's going to be ordered, that she would not be willing to accept that.

*Id.* at 18-19. The trial court also observed that Mother "ha[s] made some strides on her own. Sounds like she does have a place that's appropriate for the children. She's able to test clean, consistently clean. We can get her started on services to make sure that that's going to be a continuing thing." *Id.* at 19.

[7] On May 14, the trial court issued its order adjudicating the Children as CHINS. On June 13, following a hearing, the court issued its dispositional order. This appeal ensued.

## Discussion and Decision

[8] The trial court here entered sua sponte findings of fact and conclusions thereon, even though such findings and conclusions are not statutorily required for CHINS adjudications. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). As to the issues covered by the findings, we first consider whether the evidence supports the findings, and then whether the findings support the judgment. *Id.* We

review the remaining issues under the general judgment standard and will affirm the judgment "if it can be sustained on any legal theory supported by the evidence." *Id*. (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). Additionally, in family law matters, Indiana appellate courts have a well-established preference for granting latitude and deference to our trial courts. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). This deference recognizes the trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, in contrast to the appellate court's review of a cold transcript. *Id*. When performing appellate review of a CHINS determination, "[w]e neither reweigh the evidence nor judge the credibility of the witnesses." *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Instead, "[w]e consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom." *Id*.

[9] "[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). "[A] CHINS adjudication is not a determination of parental fault but is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention." *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015), *trans. denied*. Because a CHINS adjudication is civil in nature, DCS "must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *Id*.

[10] Here, DCS alleged that the Children were CHINS pursuant to Indiana Code Section 31-34-1-10, which provides,

Except as provided in sections 12 and 13 of this chapter, a child is a child in need of services if:

(1) the child is born with:

(A) fetal alcohol syndrome;

(B) neonatal abstinence syndrome; or

(C) any amount, including a trace amount, of a controlled substance, a legend drug, or a metabolite of a controlled substance or legend drug in the child's body, including the child's blood, urine, umbilical cord tissue, or meconium; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; or

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[11]  Mother challenges the sufficiency of the evidence as to paragraphs 1(C) and 2(B). As to paragraph 1(C), Mother contends that there was insufficient evidence to show that the Children were born with a controlled substance in their umbilical cord tissue. On that point, Mother argues that the trial court erred in admitting Exhibits 1 and 2. "We review a trial court's admission of evidence for an abuse of discretion." *In re Paternity of H.R.M.*, 864 N.E.2d 442, 445 (Ind. Ct. App. 2007). However, the "fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we

conclude the admission affected a party's substantial rights." *Id*. at 445-46. "In general, the admission of evidence that is merely cumulative of other evidence amounts to harmless error as such admission does not affect a party's substantial rights." *Id*. at 450-51.

[12]  Exhibits 1 and 2 consisted of the lab reports indicating positive tests for the presence of methamphetamine in the Children's umbilical cord tissue. Regardless of the admissibility of these lab results, there is testimony in the record that the Children's umbilical cord blood tests were positive for a controlled substance at birth. Caudill testified without objection that the umbilical cord test results were positive for methamphetamine. Tr. Vol. 2 at 8. In addition, Mother testified that the Children's umbilical cord blood tested positive for illegal drugs. *Id*. at 13. Therefore, any error in the admission of Exhibits 1 and 2 was harmless, and we need not address the merits of Mother's argument concerning their admissibility. In addition, given Mother's testimony, the evidence that there was a controlled substance present in the umbilical cord tissue of both the Children was uncontroverted. We conclude that there was sufficient evidence to establish paragraph 1(C).[2]

---

[2] Mother argues that a CHINS finding pursuant to Section 31-34-1-10 requires evidence of endangerment, citing *In re S.M.*, 45 N.E.3d 1252 (Ind. Ct. App. 2015), and *Ad.M. v. Indiana Department of Child Services*, 103 N.E.3d 709, 713 (Ind. Ct. App. 2018). However, in both cases the discussion of endangerment related to a CHINS finding under Indiana Code Section 31-34-1-1, which specifically requires a showing of impairment or endangerment. Section 31-34-1-10 has no such requirement.

[13] As for paragraph 2(B), Mother asserts that there is insufficient evidence that the Children need care, treatment, or rehabilitation unlikely to be provided or accepted without the coercive intervention of the court. "The element of whether coercive intervention is necessary 'guards against unwarranted State interference in family life, reserving that intrusion for families where parents lack the ability to provide for their children, not merely where they encounter difficulty in meeting a child's needs.'" *Matter of D.P.*, 72 N.E.3d 976, 985 (Ind. Ct. App. 2017) (quoting *S.D.*, 2 N.E.3d at 1290). A CHINS finding "should consider the family's condition not just when the case was filed, but also when it is heard." *Matter of N.C.*, 72 N.E.3d 519, 524 (Ind. Ct. App. 2017) (quoting *S.D.*, 2 N.E.3d at 1290).[3]

[14] Mother contends that the trial court erred in failing to consider her situation at the time of the factfinding hearing and that, by that time, she had rectified the reasons that led to the Children's removal: "Mother had stable housing, had all the necessary supplies to care for her children, had clean drug screens for 7 weeks, had employment, was attending therapy and addressing her substance abuse issues." Appellant's Br. at 23. Mother challenges the trial court's finding that reads, "At this time Mother does not have stable housing for herself and the children: She has fourteen (14) days to leave her current residence and currently has no where [sic] else to go." Appellant's App. Vol. 2 at 23. While Mother concedes that this was true on March 19, she asserts that it was no

---

[3] Likewise, at future hearings, the trial court should consider Mother's current situation.

longer true on May 7. We agree that at the factfinding hearing, DCS presented no evidence that Mother was currently homeless, and Mother testified that she had found a place to live. Therefore, the finding regarding Mother's lack of housing is clearly erroneous, but Mother does not challenge any other written findings.

[15] In addition to the written findings, the trial court explained its ruling at the conclusion of the factfinding hearing. Upon review, it is apparent that the trial court considered Mother's current condition.[4] The trial court noted that Mother "had made some strides on her own," had "a place that's appropriate for the children," and had been "able to test clean, consistently clean." Tr. Vol. 2 at 19. However, the trial court also noted that Mother had tested positive twice for methamphetamine but testified that she did not believe that she requires any treatment or help from DCS. Mother does not dispute that testimony but asserts that she is already engaged in services and therefore does not need DCS services. Presumably, Mother is referring to the therapy she receives from the "patient advocate." *Id.* at 16. We conclude that Mother's testimony that she did not believe that she needed treatment for drug abuse supports the trial court's conclusion that Mother would not accept drug abuse treatment unless it was court ordered. *Id.* Mother's argument is merely a

---

[4] Mother contends that the trial court erred in not allowing testimony on her condition at the time of the factfinding hearing. Although DCS objected to Mother's testimony regarding her possession of childcare supplies, the trial court did not sustain the objection and allowed Mother to continuing testifying about her current condition, including for example, whether she had employment, whether she had tested positive for drugs since March, and whether she was seeing a therapist. Tr. Vol. 2 at 16-17.

request to reweigh the evidence, which we must decline. We conclude that the evidence is sufficient to establish that the Children need care, treatment, or rehabilitation that is unlikely to be provided or accepted without the coercive intervention of the court.

[16] Based on the foregoing, we conclude that sufficient evidence supports the CHINS adjudication and affirm.[5]

[17] Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[5] Because we have concluded that the evidence supports the CHINS adjudication pursuant to Section 31-34-1-10, we need not address Mother's argument that the trial court also erred in finding that the Children were CHINS under Section 31-34-1-1. However, we would have no difficulty in concluding that the evidence was sufficient to show that Mother's drug use seriously endangered the Children's physical or mental condition as required by paragraph 1 of that section.